## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

RONALD HANTZ,

      Plaintiff,

v.

PROSPECT MORTGAGE, LLC,

      Defendant.

Civil Action No. 1:13-cv-01435-JCC-TRJ

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

/s/ Nicholas Woodfield
Nicholas Woodfield, Esq. (VSB# 48938)
R. Scott Oswald, Esq. (VSB# 41770)
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
nwoodfield@employmentlawgroup.com
soswald@employmentlawgroup.com

Curtis P. Zaun, MN Bar No. 266310*
Timothy C. Selander, MN Bar No. 0387016*
Paul J. Lukas, MN Bar No. 22084X*
Matthew H. Morgan, MN Bar No. 304657*
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(612) 256-3200
(612) 338-4878 (facsimile)
czaun@nka.com
selander@nka.com
lukas@nka.com
morgan@nka.com
*Admitted pro hac vice
Counsel for Plaintiff

# **TABLE OF CONTENTS**

INTRODUCTION .........................................................................................................1

PROCEDURAL BACKGROUND.................................................................................2

    I.  Plaintiff's Involvement in *Sliger v. Prospect Mortgage, LLC*...................................2

    II.  Plaintiff's Involvement in *Sehler, et al. v. Prospect Mortgage, LLC* .......................3

FACTUAL BACKGROUND .........................................................................................4

    I.  Plaintiff's Employment With Defendant ................................................................4

STATEMENT OF MATERIAL FACTS IN DISPUTE ......................................................7

STANDARD OF REVIEW ...........................................................................................13

ARGUMENT ...............................................................................................................13

    I.  The FLSA is a Remedial Statute Intended to Protect All Employees, Including
        Loan Officers ....................................................................................................13

    II.  The FLSA Statutory and Regulatory Framework .....................................................15

        A.  Defendant Bears the Burden of Proving By Clear and Convincing Evidence
            that Plaintiff's Actual Job Duties Satisfy Each Element of the Outside Sales
            Exemption ....................................................................................................15

        B.  Employers Are Responsible for FLSA Compliance and Cannot Circumvent the
            Act's Requirements Through Oral or Written Agreements with Employees ......15

        C.  The DOL Regulations Define Exempt Outside Salespersons.............................17

        D.  The DOL's March 31, 2006 Opinion Letter Analyzing the Application of the
            Outside Sales Exemption to Loan Officers......................................................19

    III. Defendant's Motion for Summary Judgment on the Outside Sales Exemption
        Must Be Denied ................................................................................................20

        A.  Plaintiff Did Not Customarily and Regularly Engage in Sales Activities
            Outside of Defendant's Office or His Home Office ............................................20

        B.  Defendant's Motion Fails because it Cannot Show that Plaintiff
            Customarily and Regularly Sold Loans to Borrowers at their Homes
            or Places of Business ......................................................................................21

C.  Any Promotion Work Plaintiff Performed Outside was Non-Exempt Work ........22

D.  District Courts Regularly Hold that Loan Officers Like Plaintiff Do Not
    Qualify for the Outside Sales Exemption .............................................................22

E.  Defendant's Authority is Non-Binding and Distinguishable.................................23

IV. The Jury Should Determine Whether Defendant Acted Willfully ............................26

CONCLUSION....................................................................................................................27

## TABLE OF AUTHORITIES

**CASES.**

*Ale v. Tenn. Valley Auth.*, 269 F.3d 680 (6th Cir. 2001)........................................................15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................................13

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ...........................................................14, 15

*Arnold v. Reliant Bank*, 932 F. Supp. 2d 840 (M.D. Tenn. 2013) ........................................23

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ..................................13

*Belton v. Premium Mortgage, Inc.*,
No. 03-0964-CV-W-HFS, 2006 WL 561489 (W.D. Mo. Mar. 6, 2006)..............................22

*Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253 (4th Cir. 1991) ...................................13

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ...........................................................16

*Brown v. Am. Broad. Co.*, 704 F.2d 1296 (4th Cir. 1983) ...................................................26

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943 (2d Cir. 1959) ......................................16

*Casas v. Conseco Fin. Corp.*,
No. CIV.00-1512(JRT/SRN), 2002 WL 507059 (D. Minn. Mar. 31, 2002) ........................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................13

*Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d 895 (N.D. Ohio 2006)
aff'd, 249 F. App'x 441 (6th Cir. 2007) ..............................................................................23

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ...................................18

*Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011)...........................16

*Conway v. Takoma Park Volunteer Fire Dep't, Inc.*, 666 F. Supp. 786 (D. Md. 1987)........15

*Cougill v. Prospect Mortgage, LLC*,
No. 1:13cv1433 (JCC/TRJ) (E.D. Va. Jan. 14, 2014) ......................................................*passim*

*Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688 (4th Cir. 2009)...................15

*Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351 (4th Cir. 2011)...................26

*Dixon v. Prospect Mortgage, LLC,*
No. 1:13cv1434 (JCC/TRJ) (E.D. Va. Jan. 14, 2014) ...........................................*passim*

*Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158 (4th Cir. 1992) ....................................2, 26

*Haines v. S. Retailers, Inc.*, 939 F. Supp. 441 (E.D. Va. 1996)............................................15, 26

*Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV 3043 PAE,
 --- F. Supp. 2d ----, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013).....................................16

*Hartman v. Prospect Mortgage, LLC,*
No. 1:13cv1432 (JCC/TRJ) (E.D. Va. Jan. 7, 2014) ............................................*passim*

*Ho v. Ernst & Young LLP,*
No. C 05-4867 JF(HRL), 2009 WL 111729 (N.D. Cal. Jan. 15, 2009)..................................25

*Lint v. Northwestern Mut. Life Ins. Co.,*
No. 09CV1373 DMS (RBB), 2010 WL 4809604 (S.D. Cal. Nov. 19, 2010) ......................25

*Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302 (App. Div. 2005).........................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)............................24

*McLaughlin v. Murphy,*
436 F. Supp. 2d 732 (D. Md. 2005) aff'd, 247 F. App'x 430 (4th Cir. 2007).....................23

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).......................................................26

*Meyer v. Worsley Cos., Inc.*, 881 F. Supp. 1014 (E.D.N.C. 1994) .......................................15

*Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013)......................................14

*Overnight Motor Co. v. Missel*, 316 U.S. 572 (1942)...........................................................14

*Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762 (D. Md. 2008) ...........................16

*Quinteros v. Sparkle Cleaning, Inc.,*
No. CIV.A. AW-07-0628, 2010 WL 3000865 (D. Md. July 26, 2010)................................16

*Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785 (1999) ...............................................25

*Schultz v. All-Fund, Inc.,*
No. CIV. JFM 06 CV 2016, 2007 WL 2333049 (D. Md. Aug. 13, 2007)............................23

*Sehler, et al. v. Prospect Mortgage, LLC,*
No. 1:13-cv-00473-JCC-TRJ (E.D. Va.) ...............................................................................3

*Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) ...........................................15

*Sliger v. Prospect Mortgage, LLC,*
No. CIV. S–11–465 LKK/EFB, 2011 WL 3747947 (E.D. Cal. Aug. 24, 2011) ...................2

*Taylor v. Waddell & Reed, Inc.,*
No. 09cv2909 AJB (WVG), 2012 WL 10669 (S.D. Cal. Jan. 3, 2012)...............................24

*Walling v. Helmerich & Payne*, 323 U.S. 37 (1944) ............................................................14

**STATUTES, REGULATIONS, AND RULES**

Fed. R. Civ. P.56(a) ................................................................................................13

29 C.F.R. § 541.500(a)............................................................................................17

29 C.F.R. § 541.502 ..................................................................................17, 19, 21, 22

29 C.F.R. § 541.503 ..........................................................................................18, 22

29 C.F.R. § 541.701 ..........................................................................................18, 20

29 U.S.C. § 202(a) ..................................................................................................13

29 U.S.C. § 206 ......................................................................................................15

29 U.S.C. § 207(a)(1)..............................................................................................15

29 U.S.C. § 213(a)(1)........................................................................................15, 17

29 U.S.C. § 255(a) ..................................................................................................26

**OTHER**

Administrator's Interpretation, FLSA2010-1,
2010 WL 1822423 (Mar. 24, 2010) ........................................................................14

Wage and Hour Opinion Letter FLSA 2006-11,
2006 WL 1094597 (March 31, 2006) ........................................................1, 19-21, 27

Wage and Hour Opinion Letter FLSA 2007-2,
2007 WL 506575 (Jan. 25, 2007) .......................................................................21, 24

## <u>INTRODUCTION</u>

This is the fourth time in the past two months that Defendant Prospect Mortgage ("Defendant") has asked this Court to determine as a matter of law that one of its mortgage loan officers qualifies for the outside sales exemption to the overtime pay and minimum wages requirements of the Fair Labor Standards Act ("FLSA").  In two of those cases, the Court granted Defendant's motion, holding that the plaintiffs' testimony confirmed that they customarily and regularly engaged in outside sales activities, and thus satisfied the requirements of the exemption.  *See Hartman v. Prospect Mortgage, LLC*, No. 1:13cv1432 (JCC/TRJ) (E.D. Va. Jan. 7, 2014); *Dixon v. Prospect Mortgage, LLC*, No. 1:13cv1434 (JCC/TRJ) (E.D. Va. Jan. 14, 2014).  In the third case, however, the Court denied Defendant's motion, holding that the plaintiff's testimony regarding the amount and frequency of her outside sales activities was "inapposite," "uncertain," "ambiguous," and "not sufficiently clear" such that a jury trial was necessary to determine "the degree to which [she] was away from the office conducting sales activities." *Cougill v. Prospect Mortgage, LLC*, No. 1:13cv1433 (JCC/TRJ) (E.D. Va. Jan. 14, 2014).  Because the record in this case contains material fact questions like those identified by the Court in *Cougill*, the Court should deny Defendant's motion as to its outside sales exemption defense.[1]

The Court should also deny Defendant's motion on its statute of limitations ("willfulness") defense because there is a fact question as to whether Defendant knowingly ignored its responsibilities under the FLSA.  Specifically, Defendant admits that it relied on a March 31, 2006 Opinion Letter issued by the Department of Labor ("DOL") regarding the

---

[1] As explained below, Plaintiff respectfully disagrees with the Court's analysis in *Hartman*, *Dixon*, and *Cougill* regarding whether the outside sales exemption requires Defendant to show that Plaintiff customarily and regularly engaged in sales activities at customers' homes or places of business, and also opposes Defendant's motion in this case on the same grounds.

application of the outside sales exemption to mortgage loan officers when it classified Plaintiff

(and all of its loan officers) as exempt.  At the same time, and in direct contravention of the

DOL's clear instruction in that letter, Defendant admits that it never conducted an individualized

analysis as to whether Plaintiff (or any loan officer) customarily and regularly worked outside

the office.  Indeed, unlike the plaintiffs in *Hartman*, *Dixon*, and *Cougill*, Plaintiff Hantz never

signed any documentation concerning Defendant's purported expectation that he customarily and

regularly engage in outside sales activities, and he testified that Defendant never communicated

that purported expectation to him.  Whether an employer acted willfully within the meaning of

the FLSA is a question for the jury.  *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162 (4th

Cir. 1992) (citing *Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1304 (4th Cir. 1983)) ("In general,

issues of fact bearing on the application of a statute of limitations are submitted, as are other

issues of fact, for determination by the jury.")  Given the material facts in dispute, the Court

should deny Defendant's motion and allow the jury to decide the issue.

## PROCEDURAL BACKGROUND[2]

I.   **Plaintiff's Involvement in *Sliger v. Prospect Mortgage, LLC***

Plaintiff was initially an opt-in plaintiff in a class and collective action to recover

overtime pay and minimum wages filed in the Eastern District of California titled *Sliger v.*

*Prospect Mortgage, LLC*, No. 2:11-CV-00465 (E.D. Cal.) ("*Sliger*").  The *Sliger* named

plaintiffs filed their Complaint on October 18, 2010.  (*Sliger* ECF Nos. 1, 25).  Over Defendant's

objection, the *Sliger* court granted the *Sliger* named plaintiffs' motion for FLSA conditional

certification and judicial notice.  *See Sliger v. Prospect Mortgage, LLC*, No. CIV. S–11–465

---

[2] Although Plaintiff recognizes that the Court is familiar with the procedural background of this
case and the underlying actions (*Sliger* and *Sehler*) based on the motion practice in the *Hartman*,
*Dixon*, and *Cougill* cases, Plaintiff states it again here for the sake of clarity and consistency.

LKK/EFB, 2011 WL 3747947 (E.D. Cal. Aug. 24, 2011).  Plaintiff opted-in to *Sliger* on January 6, 2012, after receiving the court-approved notice.  (Defendant's Answer, *Sehler* ECF No. 28 ¶ 17.)  After several months of discovery, the *Sliger* plaintiffs subsequently negotiated a decertification stipulation with Defendant, which the Court entered on January 23, 2013.  (*Id.* ¶ 19.)  Under the terms of the stipulation, all *Sliger* opt-in plaintiffs, including Plaintiff, could file their individual claims for overtime pay and minimum wages in another forum and enjoy a tolling of the statute of limitations until April 23, 2013.  (*Id.*)

## II.     Plaintiff's Involvement in *Sehler, et al. v. Prospect Mortgage, LLC*

On April 18, 2013, Plaintiff and seven other former *Sliger* opt-in Plaintiffs filed their FLSA minimum wage and overtime claims against Defendant in *Sehler, et al. v. Prospect Mortgage, LLC*, No. 1:13-cv-00473-JCC-TRJ (E.D. Va.).  The *Sehler* Plaintiffs subsequently filed an Amended Complaint on May 24, 2013 and a Second Amended Complaint on August 19, 2013.  (*Sehler* ECF Nos. 3, 12.)  As in *Sliger*, the *Sehler* Plaintiffs alleged that Defendant violated the FLSA's minimum wage and overtime pay provisions by misclassifying them as exempt outside sales employees.  (*Id.*)  Defendant filed its Answer to the Second Amended Complaint on September 5, 2013, denying the *Sehler* Plaintiffs' allegations.  (*Sehler* ECF No. 25.)  After the Court denied Defendant's Motion to Stay on September 16, 2013 (*see Sehler* ECF Nos. 29-30), the parties engaged in written and oral discovery.  Discovery closed on November 15, 2013.  (*Sehler* ECF No. 10.)  That same day, Defendant filed a Motion to Sever, asking the Court to either dismiss each of the Plaintiff's claims without prejudice, or, in the alternative, to hold separate trials for each Plaintiff.  (*Sehler* ECF Nos. 49-50.)  In their response, the *Sehler* Plaintiffs opposed Defendant's motion to the extent it sought to dismiss their claims without prejudice, but agreed to separate trials.  (*Sehler* ECF No. 52.)

The Court held a Final Pretrial Conference on November 21, 2013, during which it granted Defendant's motion to sever to the extent it sought separate trials, assigned five of the remaining Plaintiffs new case numbers, and set trial dates.  (*Sehler* ECF No. 58.)  The Court set Plaintiff's case for a trial beginning on February 25, 2014.  (*Hantz* ECF No. 3.)

## FACTUAL BACKGROUND

### I.    Plaintiff's Employment With Defendant

Plaintiff worked for Defendant as a loan officer from January 24, 2007 until October 16, 2009.[3]  (*Sehler* ECF No. 56, Joint Statement of Uncontested Fact ("JSUF") ¶ 9.)  Defendant classified Plaintiff as an exempt outside salesperson, did not track his hours worked (or require him to track his work hours), and did not pay him minimum wages or overtime pay when he worked more than forty hours in a workweek.  (JSUF ¶ 23-26.)  Defendant is not in possession of any records of the days or hours Plaintiff worked, (*id.* ¶ 27), and has never looked at what its loan officers were doing on an individual basis to determine whether they meet the requirements of the outside sales exemption (Rule 30(b)(6) Deposition of Kevin Tackaberry 147:9-148:11, 155:2-18).[4]

Plaintiff did not sign any documents regarding Defendant's purported expectation that he work outside the office, nor did he complete a quarterly certification that he spent a certain amount of time outside the office.  Hantz Dep. 147:5-148:5.)  Although Plaintiff testified that his manager, Grayson Hanes ("Hanes"), had an "attitude" that loan officers should "be out there

---

[3] Plaintiff began his employment with Fidelity and Trust Mortgage, which was later purchased by MetroCities Mortgage, which was in turn purchased by Defendant.  (Deposition of Ronald Hantz ("Hantz Dep.") Hantz Dep. 27:14-28:4.)  Relevant excerpts from the transcript of the Deposition of Plaintiff Ronald Hantz are attached hereto as Exhibit 1.

[4] Relevant excerpts from the transcript of the Rule 30(b)(6) Deposition of Kevin Tackaberry are attached hereto as Exhibit 2.

knocking on doors and those kind of things," (*Id.* 137:2-8), he also testified that no one told him

or communicated that expectation to him.  (*Id.* 218:20-219:9; 266:13-267:11.)  For his part,

Hanes testified that he did not care how a loan officer generated their loans so long they were

generating a lot of quality loans, (Deposition of Grayson Hanes ("Hanes Dep.") 118:10-17),[5] and

he could not recall Defendant ever asking him whether it wanted Plaintiff or any loan officer to

work inside or outside of the office (*id.* 64:21-65:21).

 Prior to becoming a loan officer, Plaintiff worked for years as a consultant and project

manager for organizations attempting to build affordable housing.  (Hantz Dep. 28:10-35:14.)

Given his experience working with those organizations, Plaintiff's referral sources were different

than other loan officers.  (*Id.* 116:9-117:17; 230:7-18.)  Typically, Plaintiff worked with low to

moderate income borrowers, many of whom had credit issues and/or were purchasing their first

home.  (*Id.*)  His primary referral sources were two churches that he attended, and one or two

realtors.  (*Id.* 211:8-212:19.)  He primarily maintained contact with his referral sources by

telephone and email.  (Declaration of Ronald Hantz ("Hantz Decl.") ¶ 3.)

 The most frequent activity that Plaintiff performed outside the office was a seminar that

he tried to give monthly, and that typically took place at churches or real estate offices.  (Hantz

Dep. 109:9-112:2.)  He attended only a few open houses during his employment with Defendant,

typically on weekends during the summer months.  (*Id.* 121:2-125:1.) On the weekends when he

did attend an open house, he only spent three or four hours.  (*Id.*)  He also tried making new

connections with realtors, typically inviting them into Defendant's office for breakfast on at most

a quarterly basis.  (*Id.* 125:2-126:20.)  On occasion, "probably 3 to 5 percent" of his time, he

would bring breakfast and business cards to realtors' offices, but these efforts were not fruitful

---

[5] Relevant excerpts from the transcript of the Deposition of Grayson Hanes are attached hereto as
Exhibit 3.

because in his experience, successful realtors are rarely in their offices.  (*Id.* 126:21-128:7.)

Although Plaintiff estimated that he spent "maybe 5, 5 percent, 8 percent of [his] time" handing

out fliers at various events, in the same breath he testified that this was an infrequent activity

because the events did not occur every week, or even every month.  (*Id.* 129:22-131:3.)  Much of

the time he spent attempting to build his referral base was spent on the phone contacting

accountants and attorneys.  (*Id.* 131:4-132:19.)

During the workweek, Plaintiff worked in Defendant's Fairfax, Virginia office, typically

from 9:00 am until 3:00 pm, and sometimes as late as 6:00 pm.  (*Id.* 148:20-149:17.)  He also

worked from home in the evening for a couple of hours.  (*Id.* 161:7-162:8.)  On weekends, he

would work Saturdays and Sundays as necessary, typically from his home.  (*Id.* 153:5-155:11.)

During his time in either Defendant's office or his home office, he made phone calls, worked on

loan applications, prepared for seminars, discussed loans and strategy with coworkers, reviewed

products, entered customer information into Defendant's systems, and wrote thank you letters.

(*Id.* 152:14-155:3; 161:11-162:8.)

Plaintiff never sold a loan to a borrower, originated a loan, or filled out a loan application

with a borrower at the borrower's home or place of business.  (Hantz Decl. ¶ 4.)  Although he did

stop by borrowers' homes on occasion, the purpose of these infrequent visits was usually to

obtain loan documentation, signatures, or to review a credit report.  (*Id.*)  Further, the vast

majority his pre-closing communications with borrowers took place by phone or email. (*Id.*)

After resigning from his position with Defendant, Plaintiff remained in the mortgage

industry and was hired as a loan officer by Hanes, who had resigned from his managerial

position with Defendant around the same time.  (Hantz Dep. 56:13-17, 59:3-14; Hanes Dep.

6

34:12-35:18.).  Hanes testified that Plaintiff was a good employee because he produced loans, which is why he hired him again.  (Hanes Dep. 97:8-15.)

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Plaintiff does not dispute Defendant's Statement of Undisputed Facts ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 10, 12, and 16.  Plaintiff does, however, dispute the below-proffered facts and provides the below citation to the record to support his dispute of those facts:

**Defendant's Asserted Fact:** 9. To generate new loans, Hantz's manager, Grayson Hanes, expected Hantz to "be out there knocking on doors."  (Hantz Dep. at 137:2-8)

**Plaintiff's Facts Disputing Defendant's Asserted Fact:**  Although Plaintiff testified that Hanes had an "attitude" that loan officers should "be out there knocking on doors and those kind of things," (Hantz Dep. 137:2-8), he also testified that no one told him or communicated that expectation to him.  (*Id.* 218:20-219:9; 266:13-267:11.)  Further, Hanes testified that he did not care how a loan officer generated their loans so long they were generating a lot of quality loans. (Hanes Dep. 118:10-17.)

**Defendant's Asserted Fact:** 11. According to Hantz, he worked from a cubicle in Prospect's Fairfax office from approximately 9:00 a.m. to about 3:00 p.m. most days, but he was not required to be in the office for any set amount of hours. (Hantz Dep. at 148:8 - 149:8). Aside from his office work, Hantz engaged in a number of activities outside of the office in an effort to generate business.

**Plaintiff's Facts Disputing Defendant's Asserted Fact:**  Plaintiff does not dispute that "he worked from a cubicle in Prospect's Fairfax office from approximately 9:00 a.m. to about 3:00 p.m. most days, but he was not required to be in the office for any set amount of hours." Plaintiff, however, does dispute that he "engaged in a number of activities outside of the office in

an effort to generate business." Defendant provides no citation to the record for this proffered

undisputed fact. Although Plaintiff did perform some activities outside of the office, these

activities were limited, sporadic, and occasional. (*See* Hantz Dep. 110:5-112:2 (monthly

seminars); 121:2-125:1 (occasional open houses); 126:21-128:7 (infrequent visits to realtors'

offices to provide breakfast); 129:22-131:3 (infrequent attendance at homeownership workshops

to hand out fliers).)

**Defendant's Asserted Fact:** 13. In addition, Hantz spent "maybe 5 percent, [or] 8 percent" of

this time distributing fliers at various locations outside of the office, including workshops.

(Hantz Dep. at 130:8-15).

**Plaintiff's Facts Disputing Defendant's Asserted Fact:** Although Plaintiff estimated that he

spent "maybe 5, 5 percent, 8 percent of [his] time" handing out fliers at various events, in the

same breath he testified that this was an infrequent activity because the events did not occur

every week, or even every month. (Hantz Dep. 129:22-131:3.)

**Defendant's Asserted Fact:** 14. Hantz would also visit open houses to network with potential

home buyers and referral sources, such as builders and realtors. (Hantz Dep. at 121:2 - 125:1).

His purpose for attending these events was to generate business, although he thought that the

events often required significant time investments before they would result in an increase in

business for him. (*Id.* at 122:9 - 123:22). He attended these events on weekends, typically

investing a few hours each visit. (*Id.* at 124:19 - 125:1).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:** Plaintiff testified that he attended

only a few open houses during his employment with Defendant, typically on weekends during

the summer months. (Hantz Dep. 121:2-125:1.) On the weekends when he did attend an open

house, he only spent three or four hours. (*Id.*) He also testified "I didn't spend a lot of time at

8

those open houses. They weren't frequent." (*Id.* 132:8-16.)

**Defendant's Asserted Fact:** 15. Hantz also "tried to get out there" to meet valuable referral sources, such as divorce attorneys, bankruptcy attorneys and CPAs. (Hantz Dep. at 131:4 - 131:18).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:** Although Plaintiff testified that he "tried to get out there" to meet divorce attorneys, bankruptcy attorneys, and CPAs, he also testified that he primarily did so by calling them on the phone, not meeting them in person as Defendant suggests. (Hantz Dep. 131:4-132:7.)

**Defendant's Asserted Fact:** 17. He would also visit with customers at their homes, or invite them to his home at nighttime and during the weekends, for the purpose of originating business. (Hantz Dep. at 158:7-19).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:** Plaintiff admits that on occasion he visited with customers at their homes or at his home. Plaintiff, however, could not estimate the frequency of these meetings. (Hantz Dep. 158:16-19.) Further, Plaintiff disputes Defendant's characterization of his testimony because there is nothing in the record supporting Defendant's contention that the purpose of these meetings was to "originate" business. Rather, these meetings were typically to simply gather paperwork or signatures on loan documents, and he never sold or originated a loan at a borrower's home. (Hantz Decl. ¶ 4.)

**Defendant's Asserted Fact:** 18. Even with all these activities he engaged in outside of the office, Hantz said it was "very difficult to market and sell products." (Hantz Dep. at 155:18 - 156:17).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:** Defendant takes Plaintiff's testimony out of context. Although Plaintiff made the quoted statement, Plaintiff made it in the context of

9

describing the challenges he faced as a loan officer who focused on low to moderate income borrowers following the crash of the real estate market in 2008, and the transition from MetroCities Mortgage to Prospect Mortgage that occurred during the same time period.  (Hantz Dep. 156:1-17.)

**Defendant's Asserted Fact:**  19.  It is undisputed that Hantz's manager, Grayson Hanes, expected him to regularly engage in sales activity outside of the office. As noted above, Hantz concedes that Hanes expected him to "be out there knocking on doors." (*Id*. at 137:2-8). Hanes also testified that Hantz was "expected to be out selling." (Hanes Dep. at 50:15-20; 107:14 - 108:6; 110:16-18 ("Q: And he was aware that he was supposed to be outside the office making sales calls? A: Yes")).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:**  Although Plaintiff testified that Hanes had an "attitude" that loan officers should "be out there knocking on doors and those kind of things," (Hantz Dep. 137:2-8), he also testified that no one told him or communicated that expectation to him.  (Hantz Dep. 218:20-219:9; 266:13-267:11.)  In addition, Hanes testified that he did not care how a loan officer generated their loans so long they were generating a lot of quality loans. (Hanes Dep. 118:10-17.)

**Defendant's Asserted Fact:**  20. Indeed, Hantz did not have a dedicated office at Prospect's location, because he lived too far away from the office to regularly come in. (Hanes Dep. at 106:3-22).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:**  Plaintiff testified that he worked in Defendant's Fairfax office during the workweek from at least 9:00 am until 3:00 pm.  (Hantz Dep. 148:20-149:17.)

**Defendant's Asserted Fact:**  21. As Hanes explained, he expected the loan officers to spend "almost all of the time" engaged in outside sales activities. (Hanes Dep. at 105:4-7). It was rare for a loan officer to obtain any business simply by making phone calls from an office. (*Id*. at 117:7-13).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:**  Plaintiff's testimony about his experience working for Defendant contradicts Hanes' testimony.  Plaintiff testified that Hanes had an attitude that loan officers should "be out there knocking on doors and those kind of things," (Hantz Dep. 137:2-8), he also testified that no one told him or communicated that expectation to him.  (*Id*. 218:20-219:9; 266:13-267:11.)  Plaintiff testified that he worked in Defendant's Fairfax office during the workweek from 9:00 am until 3:00 pm and earned approximately $47,000 while employed by Defendant in 2009 (*Id*. 148:20-149:17; 225:10-228:8.)  And while Plaintiff engaged in some activities outside of the office, these activities were limited, sporadic, and occasional.  (*See id*. 110:5-112:2 (monthly seminars); 121:2-125:1 (occasional open houses); 126:21-128:7 (infrequent visits to realtors' offices to provide breakfast); 129:22-131:3 (infrequent attendance at homeownership workshops to hand out fliers).)

**Defendant's Asserted Fact:**  22. When Hantz and other loan officers were actually in the office, they were either taking loan applications, calling clients, or "getting ready to go on sales calls." (Hanes Dep. at 58:3-17). These sales calls included meeting with realtors, builders, financial planners, and other referral sources, as well as attending networking events (*Id*. at 59:3-24; 104:22 - 105:7).

**Plaintiff's Facts Disputing Defendant's Asserted Facts:**  During the workweek, Plaintiff worked in Defendant's Fairfax, Virginia office, typically from 9:00 am until 3:00 pm, and

sometimes as late as 6:00 pm.  (Hantz Dep. 148:20-149:17.)  During his time in either Defendant's office or his home office, he made phone calls, worked on loan applications, prepared for seminars, discussed loans and strategy with coworkers, reviewed products, entered customer information into Defendant's systems, and wrote thank you letters.  (Hantz Dep. 152:14-155:3; 161:11-162:8.)

**Defendant's Asserted Fact:**  23. While Hanes did not follow Hantz around to make sure that he was engaged in these outside sales activities, Hanes assumed Hantz was following these job expectations because "that's the only way he'd get his business." (*Id*. at 60:3-20). In any event, as explained above, Hantz concedes that he engaged in numerous outside sales activities.

**Plaintiff's Facts Disputing Defendant's Asserted Facts:**  Plaintiff's testimony about his experience working for Defendant contradicts Hanes' testimony.  Although Plaintiff testified that Hanes had an "attitude" that loan officers should "be out there knocking on doors and those kind of things," (Hantz Dep. 137:2-8), he also testified that no one told him or communicated that expectation to him.  (*Id*. 218:20-219:9; 266:13-267:11.)  In addition, Plaintiff testified that he worked in Defendant's Fairfax office during the workweek from 9:00 am until 3:00 pm.  (*Id*. 148:20-149:17.)  Plaintiff did perform some activities outside of the office, these activities were limited, sporadic, and occasional.  (*See id*. 110:5-112:2 (monthly seminars); 121:2-125:1 (occasional open houses); 126:21-128:7 (infrequent visits to realtors' offices to provide breakfast); 129:22-131:3 (infrequent attendance at homeownership workshops to hand out fliers).)  Despite working inside the office so much and performing minimal outside work, he earned approximately $47,000 while employed by Defendant in 2009.  (*Id*. 225:10-228:8.)  Hanes' own testimony on this point is contradictory: he testified that he did not care how a loan officer generated their loans so long they were generating a lot of quality loans.  (Hanes Dep.

118:10-17.)

## STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

## ARGUMENT

**I.      The FLSA is a Remedial Statute Intended to Protect All Employees, Including Loan Officers**

The bedrock purpose behind the FLSA "was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)).  The Act's minimum wage and overtime pay provisions were "designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* (internal citations and quotations omitted).  In enacting the overtime provision, Congress intended to stimulate job creation by

making the hiring of employees more cost efficient in certain scenarios than the consistent overworking of existing employees.  *Overnight Motor Co. v. Missel*, 316 U.S. 572, 578 (1942) ("In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work.").  In other words, the overtime premium provision of the FLSA was meant "(1) to spread employment by placing financial pressure on the employer," and "(2) to compensate employees for the burden of a workweek in excess of the hours fixed in the Act."  *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944); *see also Conway v. Takoma Park Volunteer Fire Dep't, Inc.*, 666 F. Supp. 786, 790 (D. Md. 1987).

This policy rationale is just as important today as our economy emerges from one of the deepest and longest recessions in the nation's history.  And although loan officers like Plaintiff are not manual laborers, they are just as entitled to minimum wages and overtime when their job duties are not "plainly and unmistakably within the[] terms and spirit" of one of the exemptions. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Indeed, the DOL has issued authority holding that loan officers do not qualify for the FLSA's administrative exemption.  *See* Administrator's Interpretation, FLSA2010-1, 2010 WL 1822423 (Mar. 24, 2010).[6]  District courts have reached the same conclusion.  *See, e.g.*, *Casas v. Conseco Fin. Corp.*, No. CIV.00-1512 (JRT/SRN), 2002 WL 507059 (D. Minn. Mar. 31, 2002).[7]

---

[6] On July 2, 2013, the United States Court of Appeals for the District of Columbia held that the DOL's Administrator's Interpretation was invalid because it was issued without notice and comment in violation of the Administrative Procedure Act.  *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013).  Although not relevant here, the continued viability of the Interpretation outside of the District of Columbia is unclear, and the case may eventually be decided by the Supreme Court.

[7] The amount of litigation and regulatory attention devoted to the exempt status of loan officers is not particularly surprising given the Bureau of Labor Statistics' estimate that nearly 300,000

## II.      The FLSA Statutory and Regulatory Framework

A.      <u>Defendant Bears the Burden of Proving By Clear and Convincing Evidence that Plaintiff's Actual Job Duties Satisfy Each Element of the Outside Sales Exemption</u>

The FLSA requires employers to pay their employees minimum wage for all hours worked, 29 U.S.C. § 206, and one-and-one-half times their "regular rate" for each hour worked in excess of forty hours per week, 29 U.S.C. § 207(a)(1), though there are exemptions to this overtime requirement.  Relevant here, Congress exempted employees employed as outside salespersons.  29 U.S.C. § 213(a)(1).  Defendant claims the outside sales exemption relieved it from its obligation to pay Plaintiff minimum wage and overtime.

Employers bear the burden of proving *each element* of an FLSA exemption defense *by clear and convincing evidence*.  *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 691-92 (4th Cir. 2009) (citing *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993)).  Indeed, FLSA exemptions are to be "narrowly construed *against* the employers seeking to assert them and their application limited to those establishments *plainly and unmistakably* within their terms and spirit."  *Id.* (quoting *Ben Kanowsky*, 361 U.S. at 392) (emphasis added).

B.      <u>Employers Are Responsible for FLSA Compliance and Cannot Circumvent the Act's Requirements Through Oral or Written Agreements with Employees</u>

Regardless of the specific exemption at issue, the focus of a district court's analysis "must be on what 'activities or duties the employee *actually* performs.'" *Haines v. S. Retailers, Inc.*, 939 F. Supp. 441, 447 (E.D. Va. 1996) (quoting *Meyer v. Worsley Cos., Inc.*, 881 F. Supp. 1014, 1019 (E.D.N.C. 1994)) (emphasis in original); *see also Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 688-89 (6th Cir. 2001).  The obligation to comply with the FLSA "is the employer's and it

people—approximately 1 in every 500 employees in the United States—are loan officers.  *See* Occupational Outlook Handbook, Department of Labor (2012), available at http://www.bls.gov/ooh/Business-and-Financial/Loan-officers.htm (last visited January 24, 2014).

is absolute.  He cannot discharge it by attempting to transfer his statutory burdens of accurate

record keeping… and of appropriate payment, to the employee."  *Caserta v. Home Lines Agency,*

*Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (internal citation omitted).  It thus follows that employers

may not circumvent the FLSA by requiring employees to agree that they are exempt employees

and thus not entitled to minimum wage and overtime compensation.  *Brooklyn Sav. Bank v.*

*O'Neil*, 324 U.S. 697, 707 (1945) (Explaining that the FLSA forbids agreements between

employees and employers to waive minimum wage and overtime pay because such agreements

"would nullify the purposes of the Act.").  For example, workers are frequently successful in

FLSA cases challenging their classification as independent contractors despite signed agreements

between the worker and the company stating that the worker agrees to be an independent

contractor, not an employee.  *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV. 3043 PAE,

--- F. Supp. 2d ----, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013), *reconsideration denied* (Nov.

18, 2013) (finding that exotic dancers who signed independent contractor agreements were

employees under the FLSA and state law); *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d

1326 (N.D. Ga. 2011) (finding that exotic dancers who signed independent contractor

agreements were employees under the FLSA); *Quinteros v. Sparkle Cleaning, Inc.*, No. CIV.A.

AW-07-0628, 2010 WL 3000865 (D. Md. July 26, 2010) (finding that janitorial workers

classified as independent contractors and subject to subcontractor agreements[8] were employees

and not independent contractors for purposes of the FLSA).

      For the same reason that written contracts between employers and employees to avoid the

requirements of the FLSA are invalid, the oral agreement or "expectation" that Defendant argues

---

[8] *See Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 766 (D. Md. 2008) (confirming
that the workers in question were subject to signed subcontract agreements).

existed between Plaintiff and Defendant is similarly unenforceable and cannot prevent Plaintiff

from recovering under the statute.

      C.      <u>The DOL Regulations Define Exempt Outside Salespersons</u>

The FLSA does not define the term "outside salesperson." 29 U.S.C. § 213(a)(1).  The

DOL regulations, however, define an exempt outside sales employee as one:

(1) Whose primary duty is:

      (i)      ***making sales*** within the meaning of section 3(k) of the Act, or

      (ii)      obtaining orders or contracts for services or for the use of facilities
      for which a consideration will be paid by the client or customer;

      and

(2) Who is customarily and regularly engaged away from the employer's place or
places of business in performing such primary duty.

29 C.F.R. § 541.500(a) (emphasis added).  Several phrases within this definition are further

defined by the DOL.

The DOL defines the phrase "away from the employer's place of business" narrowly and

precisely:

> . . . The outside sales employee is an employee who ***makes sales at the
> customer's place of business or, if selling door-to-door, at the customer's home.***
> Outside sales does not include sales made by mail, telephone or the Internet
> unless such contact is used merely as an adjunct to personal calls. Thus, any fixed
> site, whether home or office, used by a salesperson as a headquarters or for
> telephonic solicitation of sales is considered one of the employer's places of
> business, even though the employer is not in any formal sense the owner or tenant
> of the property. …

29 C.F.R. § 541.502 (emphasis added).   This regulation is important for two reasons.  First,

work performed by the employee from a home office or the employer's office is not considered

"away from the employer's place of business."  *See id.*  Thus, an employee's work time inside an

employer's office and inside the employee's home office are collectively considered time inside

the office.  Second, sales activities have to be performed not just outside the office, but at the

customer's home or place of business: "The outside sales employee is an employee who makes

sales at the customer's place of business or, if selling door-to-door, at the customer's home."  *Id.*

In order for this portion of the DOL's regulation to have any meaning, an employer claiming the

outside exemption must show that the employee in question made sales to customers at their

places of business or their homes.[9]

The next relevant DOL regulation is its definition of the phrase "customarily and

regularly."  According to the DOL regulations, the phrase means work that is performed more

than occasionally, but "less than constant. Tasks or work performed 'customarily and regularly'

includes work normally and recurrently performed every workweek; it does not include isolated

or one-time tasks."  29 C.F.R. § 541.701.

The DOL also recognizes that some salespersons perform both sales work and

"promotion work" and defines when promotion work is non-exempt work and when it is exempt

work:

> Promotion work is one type of activity often performed by persons who make
> sales, ***which may or may not be exempt outside sales work***, depending upon the
> circumstances under which it is performed. ***Promotional work that is actually
> performed incidental to and in conjunction with an employee's own outside
> sales or solicitations is exempt work.***

29 C.F.R. § 541.503(a) (emphasis added).  In other words, the regulation draws a distinction

between promotional and sales work.  To determine whether promotion work constitutes exempt

---

[9] The U.S. Supreme Court's decision in *Christopher v. SmithKline Beecham Corp*., 132 S. Ct.
2156 (2012) does not change this fact.  There were two primary issues in *Christopher*.  First,
what level of deference to afford the DOL's position taken in *amicus curiae* briefing.  132 S. Ct.
at 2165-66.  Second, the proper definition of the term "sale" under the FLSA.  *Id.* at 2169.  The
Supreme Court did not invalidate the DOL's opinion letters related to outside salespersons, nor
did it address the DOL's regulation requiring that sales be made at the customer's home or place
of business.  *See id.*

work, courts must examine not only the promotion work itself, but also whether the sales or solicitations associated with the promotion work occur inside or outside the office.  In sum, the regulation requires a review of the context in which outside promotion activities are performed, rather than consideration of them in a vacuum.

      D.    The DOL's March 31, 2006 Opinion Letter Analyzing the Application of the Outside Sales Exemption to Loan Officers

On March 31, 2006, the DOL issued an Opinion Letter finding that the outside sales exemption *could* be applied to loan officers who performed the specific job duties described in the letter.  Wage and Hour Opinion Letter FLSA 2006-11, 2006 WL 1094597 (the "2006 Opinion Letter").  Consistent with 29 C.F.R. § 541.502, the DOL identified the importance of outside sales work, outside contact with borrowers, and particularly sales to borrowers at their homes:

- They "perform their work primarily outside the employer's offices" and "spend a significant amount of time away from their employer's place of business in performing their principal duty of selling the loan products offered by their employer."

- They are "responsible for originating their own sales by contacting prospective clients and by developing and maintaining referral sources."

- They "meet with customers to sell mortgage loan packages . . . in person . . . at locations other than the employer's business, such as a client's home or other locations away from the employer's place of business."

- Although they may "contact with clients by telephone, mail, and e-mail," these contacts are "adjunct to these [outside] in-person contacts."

- "They make in-person calls on real estate agents and brokers, financial advisors, and other potential referral sources to develop borrower leads."

- They "engage in marketing and promotional activities in support of their own sales."

2006 WL 1094597, at *1. After explaining the statutory and regulatory framework addressed *supra*, the DOL found that the sale of "mortgage loan packages" satisfies the primary duty element of the outside sales exemption. *Id.* at *3. As for the second element, the DOL found that "[b]y meeting clients outside of the employer's place of business in order to initiate sales, ***such as at the clients' homes***, the "sales force" loan officers fulfill the "outside" requirement of the outside sales exemption." *Id.* (emphasis added). The DOL cautioned, however, that employers must evaluate each of their loan officers "on an individual basis to determine whether he or she qualifies for the outside sales exemption . . ." *Id.* at *4.

### III. Defendant's Motion for Summary Judgment on the Outside Sales Exemption Must Be Denied

<dl>
<dd>

A. <u>Plaintiff Did Not Customarily and Regularly Engage in Sales Activities Outside of Defendant's Office or His Home Office</u>

</dd>
</dl>

Plaintiff's testimony and Defendant's reliance on the contradictory testimony of his manager, Grayson Hanes, creates a fact question as to whether Plaintiff customarily and regularly engaged in outside sales activities. This is true regardless of whether the Court defines the term "outside sales activities" broadly to include Plaintiff's promotional work with his referral sources, or narrowly, to include only his work with customers at their homes or places of business. Indeed, the record is fairly clear that Plaintiff did not engage in any outside sales activities on a customary and regular basis. Rather, he intermittently performed a handful of limited activities throughout his employment, at most on a monthly basis. This limited frequency does not rise to the level identified by the DOL in its regulations. *See* 29 C.F.R. § 541.701 (defining customarily and regularly as "a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not

include isolated or one-time tasks.")  Because Plaintiff's testimony is that he did not perform

outside activities at that frequency, Defendant's motion should be denied.

Defendant's reliance on a DOL Opinion Letter involving model home salespersons for

the proposition that Plaintiff was customarily and regularly engaged in outside sales is similarly

misplaced.  In the letter, the DOL found that an employee who spends one or two hours outside

the office once or twice a week selling to the actual customer may satisfy the "customarily and

regularly" requirement of the outside sales exemption.  Wage and Hour Opinion Letter FLSA

2007-2, 2007 WL 506575, at *3 (Jan. 25, 2007).  But importantly, the DOL qualified its

decision, stating that "[i]t is the nature of the time spent outside the model home, rather than the

amount of time, that drives our conclusion.  Virtually all of the indispensable components of the

sales effort are concentrated in this outside period."  *Id.* at *3 n.2.  Here, the nature of Plaintiff's

work outside the office was that it was subordinate to the work he performed inside the office

because, contrary to the employee described in the letter, virtually all of Plaintiff working hours

were spent inside Defendant's office or his home office, not outside.  Moreover, unlike the

employee in the letter, none of Plaintiff's outside activities occurred on a weekly basis, and

certainly not multiple times in a week.  On this record, as in *Cougill*, the jury should decide "the

degree to which [he] was away from the office conducting sales activities."  No. 1:13cv1433

(JCC/TRJ) (E.D. Va. Jan. 14, 2014) Memorandum Opinion [ECF No. 16] at 11.

B.    Defendant's Motion Fails because it Cannot Show that Plaintiff Customarily and
      Regularly Sold Loans to Borrowers at their Homes or Places of Business

In its regulations and 2006 Opinion Letter, the DOL makes the point that employees who

qualify for the outside sales exemption make sales to customers at the customers' homes or

places of business. *See* 29 C.F.R. § 541.502; 2006 Opinion Letter, 2006 WL 1094597.  Here,

there is no evidence that Plaintiff customarily and regularly sold loans to borrowers at the

borrowers' homes or places of business.  Rather, the evidence shows that Plaintiff performed the vast majority of his work from inside Defendant's offices and that the vast majority of his pre-closing contact with borrowers occurred over the phone or by email.  Given these facts, the Court should deny Defendant's motion.

        C.      Any Promotion Work Plaintiff Performed Outside was Non-Exempt Work

Plaintiff did not customarily and regularly make outside sales to borrowers and the limited promotion work he performed was not "performed incidental to and in conjunction with [his] own outside sales or solicitations." 29 C.F.R. § 541.503.  Rather, his outside activities were "incidental to and in conjunction with" the sales he made to borrowers by phone or email.  Those promotion activities thus constitute non-exempt work and Defendant's motion should be denied.

        D.      District Courts Regularly Hold that Loan Officers Like Plaintiff Do Not Qualify
                for the Outside Sales Exemption

A number of district courts in loan officer cases like this one have either denied employer's motions for summary judgment on the outside sales exemption, or found as a matter of law that the exemption did not apply.  In *McLaughlin v. Murphy*, 436 F. Supp. 2d 732 (D. Md. 2005) aff'd, 247 F. App'x 430 (4th Cir. 2007), the district court held that the employer, a mortgage company, failed to satisfy the elements of the outside sales exemption with respect to the plaintiff loan officer because the employer failed to show that the plaintiff's sales occurred outside its office.  436 F. Supp. 2d at 737.  Importantly, the court's discussion of the outside sales requirement of the exemption specifically referenced the regulation defining an outside sale as a sale made "at the customer's place of business or home." *Id.* at 736 (citing 29 C.F.R. § 541.502).  Similarly, in *Belton v. Premium Mortgage, Inc.*, No. 03-0964-CV-W-HFS, 2006 WL 561489 (W.D. Mo. Mar. 6, 2006), the district court held that loan originators who rarely spent more than three to four hours per week on outside sales calls, did not qualify for the outside sales

exemption.  2006 WL 561489, at *3.  *See also Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d

895 (N.D. Ohio 2006) aff'd, 249 F. App'x 441 (6th Cir. 2007) (after three-day bench trial,

holding that loan officers were employees under the FLSA and did not qualify for the outside

sales exemption); *Schultz v. All-Fund, Inc.*, No. CIV. JFM 06 CV 2016, 2007 WL 2333049, at *3

(D. Md. Aug. 13, 2007) (holding that loan originators who rarely met clients outside of the office

were not covered by the outside sales exemption); *Arnold v. Reliant Bank*, 932 F. Supp. 2d 840,

857 (M.D. Tenn. 2013) (finding fact question as to whether the plaintiff loan originator was

customarily and regularly engaged away from the office).  Given the limited amount and

frequency of Plaintiff's outside activities, and that there is no evidence that he ever sold a loan to

a borrower at their home or place of business, the Court should follow these decisions and deny

Defendant's motion.

     E.    <u>Defendant's Authority is Non-Binding and Distinguishable</u>

     Defendant relies heavily on this Court's decision in *Hartman*, and Plaintiff expects that

Defendant will rely upon *Dixon* in its reply brief.  But even a cursory comparison of the records

in *Hartman* and *Dixon* with the record in this case reveals significant and important distinctions

between the respective plaintiffs' testimony.  In *Hartman*, the plaintiff testified that she spent

approximately twenty-five to thirty percent of her typical week outside of the office making

contacts to bring in business.  *Hartman*, No. 1:13cv01432 (JCC/TRJ) (E.D. Va. Jan. 7, 2014)

Memorandum Opinion [ECF No. 14] at 11.  Similarly, the plaintiff in *Dixon* testified that she

spent approximately half of her time each week outside of the office contacting referral sources.

*Dixon*, No. 1:13cv01434 (JCC/TRJ) (E.D. Va. Jan. 14, 2014) Memorandum Opinion [ECF No.

15] at 10.  Plaintiff's testimony is far different.  First, he never testified to a particular percentage

of his workweek that he spent outside the office.  Second, when he did testify about the percent

of time that he spent on particular outside activities, the percentages were minimal.  (*See* Hantz

Dep. 127:2-8 (three to five percent going to realtors' offices with doughnuts); 130:8-15 (five to eight percent going to places to pass out fliers)[10].)  Even when combined with the monthly seminars he conducted, these activities were not performed with the regularity and frequency required for Defendant to successfully claim the outside sales exemption and given the summary judgment standard, Defendant's motion should be denied.  *See Cougill*, at 11 ("For purposes of summary judgment, such ambiguous testimony must be construed in the light most favorable to the non-moving party, which in this instance is Plaintiff.") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Defendant also relies on unpublished cases from outside the Fourth Circuit, none of which involve mortgage loan officers performing the same job duties as Plaintiff.  These authorities are distinguishable and non-binding.  In *Taylor v. Waddell & Reed, Inc.*, No. 09cv2909 AJB (WVG), 2012 WL 10669 (S.D. Cal. Jan. 3, 2012), the plaintiffs worked as financial advisors who challenged their classification as independent contractors.  2012 WL 10669, at *1.  Unlike this case, the plaintiffs in *Taylor* testified that they frequently met with existing and prospective clients "wherever it was convenient for the customer," which was frequently away from the office.  *Id.* at *4.  They further testified that they were out of the office between 30 and 50 percent of the time.  *Id.*  As a result, the district court held that the plaintiffs' outside marketing and promotion work was "performed incidental to and in conjunction with" the plaintiffs' own outside sales, and the amount of time they spent outside the office "far surpasses the 'customarily and regularly' threshold" established by the DOL regulations.  *Id.* *Taylor* is thus distinguishable because in this case, there is no evidence that Plaintiff sold Defendant's loan products to borrowers outside its office (let alone at the borrowers' home or

---

[10] Plaintiff also testified that this was an infrequent activity because the events did not occur every week, or even every month.  (Hantz Dep. 129:22-131:3.)

place of business) and moreover, Plaintiff did not spend anywhere near the amount of time

outside the office.[11]   The decision against the *pro se* plaintiff in *Lint v. Northwestern Mut. Life

Ins. Co.*, No. 09CV1373 DMS (RBB), 2010 WL 4809604 (S.D. Cal. Nov. 19, 2010), is similarly

distinguishable.   There, the plaintiff worked as an "independent sales agent" selling insurance

products directly to customers.  *Id.* at *3.   Unlike this case, the plaintiff in *Lint* sold the

defendant's insurance products directly to customers in person, meeting with approximately fifty

clients per week outside the office.  *Id.*  As explained *supra*, Plaintiff's work experience with

Defendant was far different.

Decisions interpreting California's wage and hour laws are also distinguishable because

California law arguably requires courts to look beyond the job duties the employee actually

performs and to consider whether the employee's job performance "diverge[d] from the

employer's realistic expectations."  *Ho v. Ernst & Young LLP*, No. C 05-4867 JF(HRL), 2009

WL 111729, at *5 (N.D. Cal. Jan. 15, 2009); *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th

785 (1999) ("the trial court should also consider whether the employee's practice diverges from

the employer's realistic expectations, whether there was any concrete expression of employer

displeasure over an employee's substandard performance, and whether these expressions were

themselves realistic given the actual overall requirements of the job."); *Brody v. AstraZeneca

Pharm., LP*, No. CV06-6862ABCMANX, 2008 WL 6953957 (C.D. Cal. June 11, 2008) (same);

*Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302 (App. Div. 2005) (interpreting New

Jersey law but relying on the California Supreme Court's decision in *Ramirez*).  In contrast,

---

[11] As explained above, Defendant's reliance on the 2007 Opinion Letter from the Department of
Labor is distinguishable for the same reason.  There, the salespersons were regularly selling
properties to customers in the field, outside the employer's place of business, with "[v]irtually all
of the indispensable components of [their] sales efforts [] concentrated in the outside period."
2007 WL 506575, at *3.

courts considering the application of FLSA exemptions "must [focus] on what activities or duties the employee actually performs." *Haines*, 939 F. Supp. at 447 (E.D. Va. 1996) (internal quotations and citations omitted).

## IV.    The Jury Should Determine Whether Defendant Acted Willfully

The FLSA statute of limitations extends back two years from the date an employee consents in writing to bring an action under the Act.  29 U.S.C. § 255(a).  The limitations period may be extended back an additional year if the "cause of action aris[es] out of a willful violation." *Id.*  The willfulness determination may therefore determine the amount of time that a prevailing employee may recover for, but also whether that employee has a claim at all. *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011).  "[O]nly those employers who 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' have willfully violated the statute." *Id.*, 630 F.3d at 357-58 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  In other words, willfulness is established where an employer knew its conduct violated the FLSA, or showed reckless disregard of such a determination. *Id.*, 630 F.3d at 358.  The employee bears the burden of showing the employer's FLSA violations were willful. *Id.*  Unlike the issue of whether the Court should award liquidated damages, the question of whether an employer acted willfully is generally a question of fact for the jury, not a question of law. *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992) (citing *Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1304 (4th Cir. 1983)) ("In general, issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury.").

Here, there is a fact question regarding whether Defendant recklessly disregarded the FLSA when classifying Plaintiff as an exempt outside salesperson. First, Defendant is not in

possession of any records of the days or hours Plaintiff worked, and made no effort to determine whether Plaintiff worked inside or outside the office.  Indeed, Plaintiff's manager did not care how he did his job so long as he produced a large number of quality loans.  On a corporate level, Defendant clearly had knowledge of the FLSA and the outside sales requirement given its claimed reliance on the DOL's 2006 Opinion Letter and the outside sales agreements and certifications it relied on in the *Hartman*, *Dixon*, and *Cougill* matters.  Despite this knowledge, Defendant's corporate designee admitted that it has ***never*** looked at what its loan officers were doing on an individual basis to determine whether any one of them met the requirements of the exemption.  In other words, Defendant ignored the DOL's explicit instruction that employers must evaluate each of their loan officers "on an individual basis to determine whether he or she qualifies for the outside sales exemption . . ."  2006 Opinion Letter, 2006 WL 1094597, at *4.

Defendant knew about the FLSA, the outside sales exemption, and the DOL's instruction in the 2006 Opinion Letter that employers must determine on an individual level whether loan officers satisfy the requirements of the exemption.  Despite that knowledge, Defendant purposefully ignored that instruction.  Faced with those facts, the jury should determine whether it acted willfully.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

Dated: January 24, 2014                    Respectfully submitted,


                                           /s/ Nicholas Woodfield
                                           Nicholas Woodfield, Esq.
                                           VSB# 48938
                                           R. Scott Oswald, Esq.
                                           VSB# 41770
                                           The Employment Law Group, P.C.
                                           888 17th Street, NW, Suite 900
                                           Washington, D.C. 20006
                                           (202) 261-2812
                                           (202) 261-2835 (facsimile)
                                           nwoodfield@employmentlawgroup.com
                                           soswald@employmentlawgroup.com

                                           Curtis P. Zaun, MN Bar No. 266310*
                                           Timothy C. Selander, MN Bar No. 0387016*
                                           Paul J. Lukas, MN Bar No. 22084X*
                                           Matthew H. Morgan, MN Bar No. 304657*
                                           NICHOLS KASTER, PLLP
                                           4600 IDS Center, 80 South 8th Street
                                           Minneapolis, MN 55402
                                           (612) 256-3200
                                           (612) 338-4878 (facsimile)
                                           czaun@nka.com
                                           selander@nka.com
                                           lukas@nka.com
                                           morgan@nka.com
                                           *Admitted pro hac vice

                                           Counsel for Plaintiff

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2014, a copy of the foregoing Plaintiff's Opposition

to Defendant's Motion for Summary Judgment was electronically filed through the Court's

CM/ECF system, which will send a notification of such filing to the following:

> Taron K. Murakami
> Meredith C. Bailey
> SEYFARTH SHAW LLP
> 975 F Street NW
> Washington, DC 2004
> tmurakami@seyfarth.com
> mbailey@seyfarth.com
>
> Barry J. Miller
> SEYFARTH SHAW LLP
> 2 Seaport Lane, Suite 300
> Boston, MA 02210
> bmiller@seyfarth.com
>
> Andrew M. Paley
> SEYFARTH SHAW LLP
> 2029 Century Park East, Suite 3500
> Los Angeles, CA 90067
> apaley@seyfarth.com
>
> *Attorneys for Defendant*

> /s/ Nicholas Woodfield
>  Nicholas Woodfield, Esq., VSB 48938
> THE EMPLOYMENT LAW GROUP, P.C.
> 888 17th Street, NW, Suite 900
> Washington, DC 20006
> Telephone: (202) 261-2883
> Facsimile: (202) 261-2835
> nwoodfield@employmentlawgroup.net
> *Counsel for Plaintiff*