```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


RONALD HANTZ,                     )
                                  )
     Plaintiff,                   )
                                  )
          v.                      )    1:13cv1435(JCC/TRJ)
                                  )
PROSPECT MORTGAGE, LLC,           )
                                  )
     Defendant.                   )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Prospect Mortgage, LLC's ("Defendant" or "Prospect") Motion for Summary Judgment.  [Dkt. 9.]  For the following reasons, the Court will grant Defendant's Motion.

### I. Background

Prospect is a California corporation that offers consumer lending products.  (Second Am. Compl. ¶ 9.)  Plaintiff Ronald Hantz ("Plaintiff") worked as a mortgage loan officer at Prospect from January 24, 2007, until October 16, 2009.  (Second Am. Compl. ¶ 7; Joint Statement of Facts ¶ 9.)

In October 2010, several former mortgage loan officers filed a collective action against Prospect under the Fair Labor Standards Act ("FLSA").  *See Sliger v. Prospect Mortg., LLC,* No. CIV. S-11-465 LKK/EFB, 2011 WL 3747947, at *1 (E.D. Cal. Aug. 24, 2011).  Plaintiffs alleged that Prospect "misclassified them

1

as exempt employees under the FLSA, and therefore improperly failed to pay them minimum wage and overtime." *Id*. at *2. Plaintiff opted-in to the *Sliger* matter on January 6, 2012. (Second Am. Compl. ¶ 17.)

On January 23, 2013, the *Sliger* action decertified and Plaintiff was removed from the case. (Second Am. Compl. ¶ 19.) Consequently, Plaintiff filed this action against Prospect alleging analogous violations of the FLSA.[1] Plaintiff avers that Defendant wrongfully classified him as an exempt employee, resulting in lost minimum wage and overtime compensation. (*Id.* at ¶¶ 23-33.)

Defendant has now moved for summary judgment. (Def.'s Mot. for Summ. J. at 1.) Defendant first argues that Plaintiff is exempt from the FLSA's overtime and minimum wage requirements under the statute's "outside sales exemption," which provides that employers are relieved of these obligations for employees engaged "in the capacity of outside salesman." (Def.'s Mem. in Support at 6 (citing 29 U.S.C. § 213 (a)(1)).) In support, Defendant points to testimony from Plaintiff's former manager, Grayson Hanes, who testified that Plaintiff was expected to be "our there knocking on doors." (*Id.* at 11.) Defendant has also

---

[1] This lawsuit was initially filed as a joint action by several former loan officers based in Virginia. (Compl. ¶¶ 1-9.) On November 21, 2013, this Court granted Prospect's Motion to Sever and ordered the case to proceed as six separate actions. Consequently, Plaintiff is the only litigant in the above captioned case.

produced testimony that Plaintiff regularly engaged in sales work away from the office. (*Id.* at 9.) Thus, concludes Defendant, Plaintiff was properly classified as exempt. (*Id.* at 9-10.)

Defendant separately argues that Plaintiff's claims are time-barred. (Def.'s Mem. in Support at 12.) Defendant notes that Plaintiff initiated this action, at the earliest, on January 6, 2012, when he joined the *Sliger* lawsuit. Therefore, under the applicable two-year limitations period, Plaintiff cannot recover for violations prior to January 6, 2010. (*Id.*) Plaintiff, however, ceased working for Prospect in October 2009. (*Id.*)

On January 24, 2014, Plaintiff filed his opposition. (Pl.'s Opp'n at 1.) First, Plaintiff disputes his classification as an exempt employee. (*Id.* at 20.) According to Plaintiff, the evidence shows that he performed a vast majority of his work inside of Defendant's office and "did not engage in any outside sales activities on a customary and regular basis." (*Id.*) Thus, surmises Plaintiff, the outside sales exemption is inapplicable. As for timeliness, Plaintiff argues that his claims are justiciable under the FLSA's three-year limitations period. (*Id.* at 26.) Plaintiff contends that the applicability of this extended limitations period is a

3

question for the jury, and therefore summary judgment is inappropriate. (*Id.*)

Defendant's Motion for Summary Judgment is now before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole,* 48

F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson,* 477 U.S. at 256). This is particularly important where the opposing party bears the burden of proof. *Hughes,* 48 F.3d at 1381. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249-50. The mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict.

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

**III. Analysis**

A. <u>Statute of Limitations</u>

The Court will first address the threshold issue of whether the applicable statute of limitations precludes Plaintiff's claims. *See Baldwin v. City of Greensboro*, No. 1:09CV742, 2012 WL 1405789, at *4 (M.D.N.C. Mar. 1, 2012), *report and recommendation adopted by*, 2012 WL 9703088 (M.D.N.C. May 7, 2012).

A two-year statute of limitations applies to ordinary violations of the FLSA, but a three-year statute of limitations applies to willful violations. *See* 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) ("The FLSA provides two potential limitations periods. For non-willful FLSA violations, a two-year statute of limitations applies. When the violation is willful, a three-year statute of limitations applies." (citations omitted)). Accordingly, a plaintiff is limited to looking back two or three years for breaches of the FLSA by their employer. *See Qin Yong Jin v. Any Floors, Inc.*, No. 1:10-cv-1201, 2012 WL 777501, at *3 (E.D. Va. Mar. 5, 2012).

This two-tier system "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). As articulated by the Supreme

Court, a violation is willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited. *Id*. at 133. "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" it is not considered willful. *Id.* at 135 n.13. Hence, "[m]ere negligence on the part of the employer with regard to compliance with the FLSA is not sufficient to prove willfulness." *Gionfriddo v. Jason Zink, LLC,* 769 F. Supp. 2d 880, 890 (D. Md. 2011) (citation omitted).

The employee bears the burden of proof when alleging that a violation is willful. *See Desmond,* 630 F.3d at 358. Although this is ultimately a question of fact, a plaintiff must present sufficient evidence of willfulness to survive summary judgment. *See Pignataro v. Port Authority*, 593 F.3d 265, 273 (3d Cir. 2010).

Here, Plaintiff's claims plainly fall outside the two-year limitations period given he commenced this action by joining the *Sliger* lawsuit on January 6, 2012, but ceased working for Prospect on October 16, 2009. *See LaFleur v. Dollar Tree Stores, Inc.,* No. 2:12-cv-00363, 2012 WL 4739534, at *1 (E.D. Va. Oct. 12, 2012) (noting that an action under the FLSA is considered "commenced" when the complaint is filed if the plaintiff is specifically named as a party, otherwise the date the plaintiff joined the collective action applies).

7

Accordingly, to continue any portion of the current suit, Plaintiff must present sufficient evidence to create a genuine dispute as to whether the three-year limitations period is applicable. As explained below, Plaintiff has failed to sustain his burden on this issue.

Plaintiff argues that Prospect willfully violated FLSA by misclassifying him as an exempt employee and denying him proper compensation. (Pl.'s Opp'n at 26.) By his account, Prospect knew or had reason to know that he was a non-exempt employee. The record, however, is devoid of any factual support for this position. Courts have found employers willfully violated FLSA where they ignored specific warnings that they were out of compliance, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work. *See Herman v. Palo Grp. Foster Home, Inc.,* 183 F.3d 468, 474 (6th Cir. 1999); *Martin v. Deiriggi,* 985 F.2d 129, 136 (4th Cir. 1992); *Cubias v. Casa Furniture and Bedding, LLC,* No. 1:06cv386 (JCC), 2007 WL 150973, at *3 (E.D. Va. Jan. 16, 2007). Plaintiff has set forth no facts rising to that level. (*See* Def.'s Reply at 4-5.) For example, Plaintiff makes no effort to show that any of Prospect's loan officers had complained that they were entitled to overtime compensation, or that Prospect was otherwise on notice that its loan officers

8

might be entitled to overtime pay.  To the contrary, Plaintiff admits that Prospect was cognizant of authority stating that loan officers generally fall under the outside sales exemption. (Pl.'s Opp'n at 27.)  Plaintiff further acknowledges that Prospect actively recorded its reliance on the outside sales exemption through sales agreements and certifications.  *See Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1305, 1308 (N.D. Okla. 1998) ("[A]n incorrect assumption that a pay plan complies with the FLSA do[es] not meet the criteria for a willful violation of the FLSA.").  In any event, as set forth below, the evidence shows that Prospect properly classified Plaintiff as an exempt employee.

Even assuming a genuine dispute regarding Plaintiff's exempt status, it was perfectly reasonable for Prospect to presume that their practices were legal given the Department of Labor ("DOL") had recently concluded that loan officers in the same position as Plaintiff are exempt. *See* DOL Wage Hour Op. Ltr. No. FLSA2006-11 (Mar. 31, 2006) (concluding that mortgage loan officers who primarily sell loan packages outside the office fulfill both requirements of the exemption)[2]; *see also Chao v. Self Pride, Inc.*, No. Civ. RDB 03-3409, 2006 WL 469954, at *6 (D. Md. Jan. 17, 2006) ("[I]n most instances a good faith

---

[2]  DOL opinion letters are not binding on courts, but "constitute a body of experience and informed judgment" that are given "substantial weight." *Flood v. New Hanover Cnty.,* 125 F.3d 249, 253 (4th Cir. 1997).

9

disagreement with the government regarding the FLSA cannot alone support a later finding by a court that a defendant acted willfully.").

Plaintiff's efforts to create a dispute of fact on the issue of willfulness by noting that Prospect did not track his working hours are insufficient.  (Pl.'s Opp'n at 27.)  The fact that neither Defendant nor Plaintiff kept contemporaneous records of his work activities does nothing to suggest that Prospect operated with an awareness or reckless disregard as to Plaintiff's professed non-exempt status.  Indeed, it is undisputed that Prospect at all times classified Plaintiff and its other loan officers as exempt outside sales personnel.  It is only natural that an employer operating with this belief would decline to keep records that would only represent a pointless administrative burden.  Plaintiff's observation that Prospect neglected to individually assess the exempt status of each and every one of its hundreds of loan officers is also insufficient to establish willfulness.  (*Id.*)  While exemptions to the FLSA are individually held, it is unrealistic to suggest that an employer is obligated to conduct a review of the activities of each individual employee in order to rely on an exemption in cases such as this.  *See Allen v. Coil Tubing Servs., LLC,* 846 F. Supp. 2d 678, 713 (S.D. Tex. 2012).  Even assuming for the sake of argument that Prospect should have

undertaken an individualized assessment to determine Plaintiff's exempt status, he makes no serious argument that Prospect's failure to do so rises to the level of recklessness necessary to show a willful violation.

In sum, Plaintiff's argument for a three-year statute of limitations falls short.  Plaintiff admits that he engaged in outside sales activities, and there is legal authority from the DOL supporting Prospect's classification decision.  Accordingly, the Court finds that the two-year limitations period applies in this case, and Plaintiff's claims are time-barred.

### B. Outside Sales Exemption

Although the holding above is itself dispositive, the Court will still address the outside sales exemption because it too precludes Plaintiff's claims.  The FLSA requires an employer to pay minimum wage and overtime compensation to employees who work more than forty hours per week.  *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).  Nevertheless, workers employed as "outsides salespersons" are exempt from these requirements.  *See* 29 U.S.C. § 213(a)(1).  An outside salesperson is defined as an employee:

> (1) Whose primary duty is:
>
> > (i) making sales . . ., or
> >
> > (ii) obtaining orders or contracts for services or for the use of facilities for

11

          which a consideration will be paid by the client or customer; and

          (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a).[3]

As evident from this language, the outside sales exemption contains two prongs.  For purposes of the primary duty prong, the FLSA defines "sale" or "sell" to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  29 U.S.C. § 203(k).  Furthermore, the "term 'primary duty' means the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  The regulations indicate that the amount of time spent performing exempt sales work is useful, but not dispositive, in resolving an employee's "primary duty."  *Id.*  Determining an employee's primary duty requires consideration of all of the facts in a specific case, "with the major emphasis on the character of the employee's job as a whole."  *Id.*

As for the second prong, "the phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant."  29

---

[3] Although federal regulations are not binding in the same way as federal statutes, they are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute.  *See Patel v. Napolitano*, 706 F.3d 370, 373 (4th Cir. 2013).  In this case, neither party argues that any of the applicable regulations are arbitrary or contrary to the FLSA's intent.  Accordingly, the Court will give the cited regulations appropriate deference.

C.F.R. § 541.701. This includes "work normally and recurrently performed every workweek," but does not embrace "isolated or one-time tasks." *Id.* The phrase "away from the employer's place of business" is addressed in another regulation, which provides:

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business[.]

29 C.F.R. § 541.502. A separate regulation further clarifies that "promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work." 29 C.F.R. § 541.503(a).

The DOL has concluded that selling or sales related activity outside the office only "one or two hours a day, one or two times a week" can satisfy the second prong of the exemption. *See* DOL Wage Hour Op. Ltr. No. FLSA2007-2 (Jan. 25, 2007).

Because the outside sales exemption is an affirmative defense, the defendant bears the burden of establishing its application. *See Speert v. Proficio Mortg. Ventures, LLC,* No.

JKB-10-718, 2011 WL 2417133, at *6 (D. Md. June 11, 2011). Moreover, since the FLSA is a remedial act, its exemptions are narrowly construed. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."). "The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law." *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 752 (W.D. Mich. 2003) (citations omitted).

In the present case, it is undisputed that Plaintiff's primary duty was to make sales within the meaning of the exemption. *See* DOL Wage Hour Op. Ltr. No. FLSA2006-11 at 3 (deciding that mortgage loan officers who sell mortgage loan packages fulfill the sales requirement of the exemption). In both his pleadings and deposition testimony, Plaintiff admitted that he was responsible for selling mortgage loans. (Second Am. Compl. ¶ 29; Hantz Dep. 141:2-10; 251:11-17.) Accordingly, the only remaining question is whether Plaintiff "customarily and regularly" engaged in exempt sales activities away from Prospect's office.

Case law analyzing the specific parameters of the second element of the outside sales exemption is admittedly

sparse. Nevertheless, district courts who have addressed this issue with any degree of specificity have concluded that the phrase "customarily and regularly" is not a majority of the time test. *See, e.g., Lint v. Nw. Mut. Life Ins. Co.,* No. 09CV1373, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010) (finding that spending ten to twenty percent of the time outside of the office engaged in sales activity is sufficient); *Taylor v. Waddell & Reed, Inc.*, No. 09cv2909, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) ("[S]elling or sales related activity outside the office 'one or two hours a day, one or two times a week' satisfie[s] the test for the exemption." (citation omitted)). As the DOL has noted, there is no suggestion in the regulations that work performed customarily or regularly must occupy any given percentage of an employee's weekly working hours. *See* DOL Wage Hour Op. Ltr. No. FLSA2007-2 at 3. Rather, the pertinent inquiry is whether the employee performs tasks critical to the sales process away from the office on a greater than occasional basis. *Id.* at 3-4.

The fact that an employee also performs significant work inside the office does not bar the exemption. *See* DOL Wage Hour Op. Ltr. No. FLSA2006-11 at 3; *Lint,* 2010 WL 4809604, at *3 (applying the exemption although plaintiff spent up to eighty percent of his time inside the office). "Making sales is not an activity that necessarily occurs at one time and/or in one

15

location, but, rather, may comprise a number of component activities. Where some of those component activities take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an outside sales employee if the activities occurring outside of the office are critical to the sales process and occur on a consistent basis." *Wong v. HSBC Mortg. Corp.,* 749 F. Supp. 2d 1009, 1013 (N.D. Cal. Sept. 29, 2010) (citations and internal quotation marks omitted).

  Here, Plaintiff's deposition testimony illustrates that he spent a significant amount of time each week outside the office engaged in sales related activities. His undertakings included meeting with realtors and distributing fliers, attending open houses to network with potential customers, and giving seminars. (Hantz Dep. 110:4-112:2; 121:2-16; 123:20-124:22; 127:4-8; 130:11-15; 131:4-18; 158:7-15.) This outside activity is sufficient to trigger the exemption. Although Plaintiff also worked considerable hours inside the office, it is the nature of the time spent outside the office, rather than the amount of time, that drives the Court's conclusion. A weighty portion of the indispensable components of Plaintiff's sales efforts were concentrated in the outside period. (Hantz Dep. at 60 (commenting that his sales model was based heavily on home buyer seminars conducted outside the office).) This evidence, taken as a whole, supports a finding that Plaintiff

was "customarily and regularly" engaged in outside sales activity under the exemption as defined above. *See* DOL Wage Hour Op. Ltr. No. FLSA2007-2 at 3-4; *Wong*, 749 F. Supp. 2d at 1013.

In an effort to avoid the exemption, Plaintiff claims that the testimony is unclear regarding the amount and frequency of his outside sales activities. (Pl.'s Opp'n at 1, 20.) The Court is unpersuaded by this conclusory argument. Unlike the prior case where this Court declined to grant summary judgment, *see Cougill v. Prospect Mortgage, LLC,* No. 1:13cv1433 (JCC/TRJ) (E.D. Va. Jan. 14, 2014), the record is sufficiently clear concerning Plaintiff's outside sales work to reach the conclusion above.

Plaintiff further argues that the exemption is inapplicable because there is no evidence that he made a single sale to a borrower at his or her home or place of business. (Pl.'s Opp'n at 21.) Plaintiff contends that loan officers qualify for the outside sales exemption when they customarily and regularly make sales to borrowers at the borrowers' homes or places of business. (*Id.*) This narrow interpretation, however, is unsupported by any authority and has been rejected by other district courts. *See Taylor*, 2012 WL 10669, at *4 ("Because [plaintiffs] conducted substantial incidental work and solicitations outside of the office, it does not matter that the

actual moment of sale occurred inside the [defendant's] office."). The regulations simply do not limit application of the outside sales exemption to those employees that consummate sales at a client's home or place of business. *See Tracy v. NVR, Inc.*, 599 F. Supp. 2d 359, 363-64 (W.D.N.Y. 2009) ("Although plaintiff ingeniously urges the Court to find that 29 C.F.R. § 541.502's definition of the term 'away from the employer's place of business' as the customer's home or business is mandatory and exclusive . . . I find no practical basis, in the regulations or elsewhere, upon which to base such a conclusion[.]").

Nearly seventy years ago, in interpreting a prior version of the FLSA, the Tenth Circuit explained the rationale behind the outside sales exemption:

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works individually, There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941). Despite the passage of time, this rationale remains viable today. Given that Plaintiff embodies many of the attributes that drive the policy of the exemption, applying the exemption in this case comports with its reasoning and the spirit behind the wage laws generally.

Accordingly, the Court concludes that Defendant has established both prongs of the outside salesperson exemption. A review of the evidence confirms that there are no disputed material facts that could affect whether Plaintiff should be seen as exempt. Consequently, Plaintiff's FLSA claims fail as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. An appropriate order will issue.

|  |  |
|---|---|
| February 5, 2014 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |